MINER HUNTER, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

**Springfield Court of Appeals, July 7, 1910.**

1. **JUDGMENT: Satisfaction of Judgment: Gift: Estoppel.** In a suit on a judgment the defense was that plaintiff had entered satisfaction of judgment on a "satisfaction piece," which was attached to the judgment, and in which satisfaction he had admitted that the judgment had been obtained through perjury. It was further alleged that because of the satisfaction, defendant had abandoned its appeal. It appeared from the evidence that the satisfaction had been executed without consideration, and through undue influence. It further appeared that defendant had ample opportunity to perfect its appeal after the Supreme Court had refused to reverse the judgment on the strength of the satisfaction. *Held*, that under the evidence the satisfaction not being voluntary did not amount to a gift, and *held*, *further*, that the defense of estoppel was not sustained.

2. ————: **Voluntary Satisfaction: Gift: Judgment Obtained by Perjury.** Where the satisfaction of a judgment by plaintiff was not intended by him to operate as a voluntary gift upon his part to the defendant it was of no effect, even though it should be conceded that the judgment was obtained by perjury.

3. **GIFT: Judgment: Satisfaction of Judgment: Undue Influence.** A gift when properly consummated is effective and conclusive between the parties, so where a plaintiff having obtained a judgment, wishes to forgive defendant the debt and executes a satisfaction for that purpose voluntarily and without any improper influence being brought to bear upon him to induce him to enter the satisfaction, he should be bound thereby.

4. ————: **Burden of Proof.** A transaction to be an executed gift must be established by clear and convincing testimony and the burden of proof is upon the party claiming the benefit of the gift.

5. **EQUITY: Evidence: Appellate Practice.** In an action in equity the appellate court will, after giving due deference to the finding of the trial court, try the case *de novo* as far as practicable, and render such decree as the evidence warrants.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

AFFIRMED.

*James L. Minnis* and *Jones, Jones, Hocker & Davis* for appellant.

(1) The court erred in not finding that the satisfaction piece was voluntarily made and operated as a bar to plaintiff's recovery. Court erred in not finding that the execution of the satisfaction piece and the placing of the same upon record or the delivery thereof to defendant amounted to an executed gift of plaintiff to the defendant. Leddel's Executor v. Starr, 20 N. J. 274; Vanderbeck v. Vanderbeck, 30 N. J. 265; Gray v. Bartan, 55 N. Y. 68, 14 Am. Rep. 181; Ferry v. Stephens, 66 N. Y. 321; Carpenter v. Soule, 88 N. Y. 251; 42 Am. Rep. 248; Larkin v. Hardenbrook, 90 N. Y. 333; 43 Am. Rep. 176; Fassett's Appeal, 167 Pa. St. 448; Henschel v. Maurer, 69 Wis. 576; Straughan v. Tucker, 59 Ark. 93; Esswein v. Seigling, 2 Hill. Ch. (S. C.) 600; Thomas v. Fuller, 68 Hun. 361; Maclay v. Robinson, 91 Hun.

630; Adee v. Hallett, 38 N. Y. S. 273; Gordon v. Young's Admr., 10 Ky. L. Rep. 681; Brown v. Brown's Admrs., 4 B. Mon. (43 Ky.) 535; Tenbrook v. Brown, 17 Ind. 410; Green v. Langdon, 28 Mich. 221; Lamprey v. Lamprey, 29 Minn. 151; Wray v. Chandler, 64 Fed. 146.

*McShane & Goodwin, J. W. Delventhal, Rosenberger & Son* for respondent.

(1) A judgment cannot be assailed because procured by perjured testimony. Equity will not restrain the enforcement of a judgment this procured. Railroad v. Mirrieless, 182 Mo. 126; U. S. v. Throckmorton, 98 U. S. 61; Vance v. Burbank, 101 U. S. 514; United States v. Ching Shee, 22 C. C. A. 639; Demerit v. Lyford, 27 N. H. 541; Railroad v. Harrol, 65 How. Prac. 89; McCafferty v. O'Brien, 1 Cinn. L. 64; Ritchie v. McMullen, 79 Fed. 522. (2) Plaintiff having a binding, valid and unassailable judgment, it must be paid in full before it can be extinguished. Winter v. Street Railway, 73 Mo. App. 173, 160 Mo. 159. (3) Satisfaction of a judgment in due anl lawful form constitutes only a receipt, which is open to explanation and contradiction. Stewart v. Arnold, 62 Ind. 593. (4) Where entry of satisfaction of a judgment is relied upon, the law must be strictly complied with. Campbell v. Booth, 8 Md. 107; Cummins v. Webb, 4 Ark. 229; R. S. 1899, secs. 3730, 3734. (5) Where no consideration has been paid for satisfaction of a judgment, and where the manner of obtaining the satisfaction is open to criticism, the court will place plaintiff in *statu quo* and not allow such satisfaction to become a bar to his recovery on the judgment. As a rule positive, actual fraud, force, duress or coercion in the procurement of such need not be proven. The usual test is, has the judgment been paid in fact in full. Cohen v. Camp, 46 Mo. 179; McNeal v. Hunt, 6 Kan. App. 670; Building Assn. v. McClune, 6 Pa. Dist. 579; Fox v. State ex rel., 88 N. W. (Nebr.) 176; Slocum v. Freeman, 4 Abb. Dec. 297; Kerr's Ap-

peal, 104 Pa. St. 282; Stuart v. Peary, 21 Ark. 117; Stewart v. Armel, 62 Ind. 593; Mandeville v. Reynolds, 68 N. Y. 528; Bowersock v. Wickery, 61 Kan. 632; Kerr v. Kerr, 81 Ill. App. 35; Bradshaw v. Bratton, 32 S. E. (Va.) 56; Pannell v. Pannell, 100 Mo. App. 133.

STATEMENT.—Action upon judgment rendered by the circuit court of Warren county, Missouri, on November 24, 1902, for the sum of five thousand dollars on account of personal injuries sustained by plaintiff.

Plaintiff alleged in his petition the procurement of the judgment; that said cause had been appealed to the Supreme Court, the appeal dismissed by the Supreme Court on which the judgment of the circuit court became ·final and that it had not been paid.

The defendant, by answer, admitted the judgment had been procured against it and as defense alleged that it had been satisfied on December 13, 1902, by the plaintiff by what is called a "satisfaction piece" attached to the margin of the record of the judgment. For a further defense alleged that defendant relied upon this satisfaction and by reason thereof abandoned its appeal in the Supreme Court, and for that reason, plaintiff is now estopped from enforcing payment of this judgment.

Further alleged that the original judgment on which this suit was brought was procured by the perjured testimony of plaintiff, and, for that reason, recovery thereon should not now be permitted. Replication was a general denial. There was trial by the court finding and judgment for plaintiff and defendant has appealed.

The "satisfaction piece" attached to the margin of the record of the judgment is as follows:

"To R. N. Chiles, Clerk of Circuit Court, Warren County, Missouri.

"I hereby acknowledge satisfaction in full of the judgment obtained by me in the case of Miner Hunter

against the Wabash Railroad Company in Warren Circuit Court——day of November, 1902, the same having been obtained by me on perjured testimony. You are hereby authorized to make this entry on the record. Signed in duplicate. Given this 13th day of December, 1902.

His

MINER X HUNTER,

mark.

Witnesses to signature:

F. A. ORDELHEIDE,

J. GEORGE POLSTER,

W. L. MORSEY."

The plaintiff at the same time executed a stipulation for the Supreme Court to reverse the judgment as follows:

"STIPULATION TO REVERSE JUDGMENT.

"In the Supreme Court of Missouri, April Term, A. D. 1903.

Miner Hunter, Respondent,

v.

Wabash Railroad Company, Appellant.

"It is hereby stipulated by and between the parties hereto, the respondent for himself, and appellant by his attorney of record, as follows: to-wit: in consideration of the satisfaction of the judgment below by the respondent here on the court records, in Warren County, Missouri, as provided by law, said judgment having been obtained by perjury, the respondent and appellant hereby agree that an entry may be made in this court reversing said judgment and satisfying the same in accordance with the record entry now on file in the court below.

His

MINER X HUNTER, Respondent.

mark.

C. E. PEERS,

Attorney for Appellant.

Witnesses to signature:
    F. A. ORDELHEIDE,
    J. GEORGE POLSTER,  .
    W. L. MORSEY."
Indorsed on the stipulation.
"Filed and denied December 24, 1902."

As to how the plaintiff came to sign this satisfaction and stipulation the testimony is conflicting. In the trial of the damage suit the attorneys representing the plaintiff were J. B. Garber, who then lived at Warrenton, and was prosecuting attorney of the county, McShane & Goodwin, who lived at Saint Louis, and H. W. Johnson. On the 13th of December following the rendition of the judgment on November 24, M. C. Kempf, a railroad detective then in the employ of defendant, appeared in Warrenton, and after a conversation with Garber, Garber sent for plaintiff Hunter, and had him brought to his office. He introduced Hunter to Kempf. Kempf then began to ply him with questions relating to his judgment against the company and his testimony on the trial, and after fifteen or twenty minutes of sweating by Kempf plaintiff asked Garber if he might see him outside the room. Garber consented—went out in the hall and his testimony of what occurred at that time is as follows: That Hunter said to him, "Mr. Garber, what would become of me if I was to tell you the truth about this?" Garber says that he then replied: "My, God, Miner, haven't you told me the truth of this matter?" Hunter said, "No, I didn't. I didn't have any ticket." Witness then states that he was dumbfounded at this statement—turned around, went back into the room and sat down. Hunter followed him in, and after a further conversation between Hunter and Kempf that Hunter made the statement to Kempf that he didn't have a ticket at the time of the accident for which he had procured the judgment, and that then this "satisfaction piece" was signed by plaintiff Hunter, and also

the stipulation that the cause might be reversed by the Supreme Court.

The plaintiff's version of what took place in Garber's office and the conversation between himself and Garber in the hall was, in substance, as follows: That on going to Garber's office Garber introduced him to Kempf, the detective and that Peers, attorney for defendant, was also present and that Peers said to him, "Miner, I want you to tell a different story so they get the five thousand dollars back for the railroad company." Plaintiff said, "I have told you I have told the truth." Peers then said, "Lock up the G— d— negro. He has been lying long enough." Garber said, "Wait and let us see what he has to say." Then Peers left. After Peers left Kempf said, "Miner, no use to be lying for I have found out every ticket sold that day. You never bought a round trip ticket for this ride. You have been lying long enough." Witness then asked Garber to step outside a minute. This Garber did, and witness said, "What shall I do about this? I have done told the truth." Garber replied, "The best thing for you to do is to keep me out of trouble, Garber, McShane & Goodwin, is to tell a different story." Witness said, "What are you going to do with me." Garber said, "Nothing." Witness said, "Will you prosecute me?" He said, "No, you tell this story." Witness then went back inside and told Kempf that he was a humbug— that he never had a round trip ticket. Sometime after the others came in and the witness signed two papers— was not paid any money. Mr. Ordelheide read the paper to him, and that he understood that it reversed the judgment and said that Garber told him to do it. Dr. Foreman, who had amputated the leg of plaintiff after the accident, testified that Garber had told him shortly after the signing of this "satisfaction piece" that he had promised Hunter not to prosecute him if he made a different statement.

August Siebert testified that he overheard a part of

the conversation between Foreman and Garber in which Garber said to Foreman that he had promised not to prosecute Hunter.

The stipulation for reversal was filed in the Supreme Court on December 24, 1902, and the Supreme Court refused to recognize it and by order of record recited that it had been filed and denied.

The cause of action upon which plaintiff had recovered the judgment for five thousand dollars grew out of an injury alleged to have been received while he was a passenger upon defendant's train, hence the question as to whether or not he had a ticket was one of the issues of fact upon the trial of that case.

The "satisfaction piece," as well as the stipulation for reversal of the judgment by the Supreme Court was signed by plaintiff by mark and his signature witnessed by F. A. Ordelheide, who was, at the time, collector of the county, J. George Polster, the sheriff of the county, and W. L. Morsey, United States Marshall of the Eastern District of Missouri. These parties all testified that at the time Hunter's name was placed to these papers they were explained to him and that he fully understood their contents. After their execution, the "satisfaction piece" was taken to the circuit clerk's office by C. E. Peers, attorney for defendant, who was accompanied to the office of the circuit clerk by the plaintiff, and that when they reached the circuit clerk's office the circuit clerk again explained the contents of this "satisfaction piece" to Hunter for the purpose of seeing if he understood its contents and on being assured that he did, this "satisfaction piece" was then pasted to the margin of the record of the judgment.

On December 13th, the same day this "satisfaction piece" and stipulation for reversal of judgment were signed by Hunter, Garber secured from Kempf, the detective, an affidavit charging plaintiff Hunter with the offence of perjury in the trial of the damage suit against defendant. On January 6, 1903, an information was

filed in the office of the circuit clerk by Garber charging Hunter with perjury. He was arrested on January 13th upon this charge, was tried the following April, convicted and sentenced to two years in the penitentiary. An appeal was taken by him to the Supreme Court, judgment reversed and the cause remanded because of the fact that the confession of Hunter that he had committed perjury was not a voluntary confession, and should not have been admitted as evidence in the trial of that case. This case against Hunter was afterward *nollied.*

COX, J.—Nothing was paid to plaintiff at the time he executed the satisfaction of the judgment and stipulation for reversal by the Supreme Court, and it is admitted that the satisfaction was without consideration; but it is now insisted by defendant that the satisfaction was voluntary on the part of plaintiff because of the fact that he had committed perjury in the trial which resulted in the judgment sued upon, and that when the "satisfaction piece" was attached to the margin of the judgment it had the effect of an executed gift to defendant of the debt evidenced by the judgment and could not be recalled by plaintiff, and that for that reason this suit must fail.

A gift when properly consummated is effective and conclusive between the parties. [Jones v. Falls, 101 Mo. App. 536, 73 S. W. 903; Meyer v. Koehring, 129 Mo. 15, 31 S. W. 449.] Therefore, if it be true that plaintiff intended by this satisfaction to forgive defendant the debt evidenced by the judgment and executed the "satisfaction piece" for that purpose, and did so voluntarily and without any improper influences being brought to bear upon him to induce him to execute it, he should be bound by it. [Gray v. Barton (N. Y.), 14 Amer. Rep. 181; Moclay v. Robinson, 36 N. Y. Sup. 530; Fassett's Appeal (Pa.), 31 Atl. 686; Quick v. Quick, 155 Fed. 199.]

But a transaction to be an executed gift must be established by clear and convincing testimony and the burden of proof is upon the party claiming the benefit of the gift. [Jones v. Fall, supra.]

Was the execution of the "satisfaction piece" voluntary on the part of plaintiff?

After plaintiff had been tried and convicted for perjury, the Supreme Court upon appeal held in that case that the confession of plaintiff admitted at that trial was improperly admitted because the evidence disclosed that it was not voluntary. [State v. Hunter, 181 Mo. 316, 80 S. W. 955.]

The evidence in this case is conflicting as to just how plaintiff came to execute the "satisfaction piece" relied upon by defendant, but it is clear from all the testimony that his act in executing the satisfaction was induced by the conduct of his attorney Garber and Peers, attorney for defendant, and Kempf, the detective in the employ of defendant. Plaintiff was an ignorant negro who could neither read nor write. Garber and the detective had talked the matter over at Garber's office before plaintiff was sent for, and when the plaintiff was brought in Garber allowed the detective full sway in his efforts to induce plaintiff to admit that he had committed perjury at the trial. The detective admitted that he lied to plaintiff in his effort to trap him and induce him to make a statement at variance with his testimony at the trial. Garber evidently knew that and made no protest. The plaintiff was a young man about twenty-one years of age, and Garber had been first employed in the case by the father of plaintiff and at the time these papers were signed plaintiff's father was not called or consulted. There were three other attorneys in the case with Garber, and they with him owned a half interest in this judgment. They were not consulted. Garber as prosecuting attorney procured from the detective, at the same time, an affidavit charging the plaintiff with perjury but did not start a prosecution against

plaintiff until after it became known that the Supreme
Court had refused to recognize the stipulation for the
reversal of the judgment signed by plaintiff.

There was no evidence that plaintiff had committed
perjury except this alleged confession to the detective
and Garber; while it was shown that at the time of the
accident, while plaintiff was lying by the railroad at the
place of the injury, and immediately thereafter, he said
the same thing that he testified to on the trial, and de-
fendant had taken plaintiff's deposition prior to the
trial, and in that deposition his testimony was the same.

This case was, by defendant's answer, converted
into an equitable action, and in such case the appellate
court will, after giving due deference to the finding of
the trial court, try the case *de novo* as far as practicable
and render such decree as the evidence warrants. [Tur-
ner v. Overall, 172 Mo. 271, 287, 72 S. W. 644; Kinney
v. Murray, 170 Mo. 674, 707, 71 S. W. 197; Lins v. Lon-
hardt, 127 Mo. 271, 29 S. W. 1025.]

Following this rule we have gone over this testi-
mony very carefully and have no hesitancy in saying
that the trial court was amply justified in taking the
testimony of plaintiff as giving the correct version as to
how he came to execute the "satisfaction piece" relied
upon by defendant, and, hence, the only proper finding
the court could have made was that the plaintiff in ex-
ecuting this so-called satisfaction did not intend it as
a gift to defendant, but that he executed it by rea-
son of the influence brought to bear upon him by Gar-
ber and the detective. If this satisfaction by plaintiff
was not intended by him to operate as a voluntary gift
upon his part to defendant it was of no effect even
though it should be conceded that the judgment was ob-
tained by perjury. [Wabash Railway Company v. Mir-
rielees, 182 Mo. 126, 81 S. W. 437.]

It is also contended by defendant that even though
the satisfaction of the judgment was not valid as a
legal satisfaction yet plaintiff should be estopped from

enforcing it because defendant relied upon it and abandoned its appeal to the Supreme Court in that case on account of it. If this be true, we would say that defendant ought to be granted the relief prayed for, but the record does not sustain that contention. Attorney Grover who was, at that time general attorney for defendant in Missouri, testified that the appeal was abandoned by reason of this satisfaction having been executed by plaintiff; but notwithstanding this testimony the record shows that after this satisfaction had been signed by plaintiff and attached to the record of this judgment, the defendant prepared and filed its bill of exceptions and also filed in the Supreme Court the stipulation to reverse the judgment and endeavored to have that court to reverse the case upon that stipulation and after the Supreme Court had refused to grant that request the appellant still had ample opportunity to have had the merits of its appeal heard by the Supreme Court but neglected to do so. Peers, local attorney for the defendant, and Kempf, detective of defendant, had procured the execution of the "satisfaction piece" by plaintiff, hence, defendant was chargeable with notice of all the facts connected with its procurement, and as all persons, artificial as well as natural, are presumed to know the law, defendant must, in legal contemplation, have known that the satisfaction was a nullity, and especially was this true after the Supreme Court had refused to recognize the validity of the stipulation to reverse the judgment. In view of these facts, the conclusion is irresistible that the real reason defendant took no further steps in the prosecution of the appeal was that its attorneys in charge thereof concluded that the appeal was without merit and they were not induced to abandon the appeal by reason of anything the plaintiff had done.

The evidence in this case will not support the defense of estoppel. The judgment is for the right party and will be affirmed. All concur.